**Montour School District v. Township of Collier**

2

*Ira Weiss* and *Gregory Gleason,* for plaintiff Montour School District.

*Samuel P. Kamin* and *Robert J. Garvin,* for plaintiff Township of Robinson.

*Charles M. Means* and *Howard J. Schulberg,* for defendant Township of Collier.

*Michael A. O'Rorke,* for defendant Chartiers Valley School District.

WETTICK JR., *A.J.,* July 3, 2007—Motions for judgment on the pleadings of plaintiffs and defendants are the subject of this opinion and order of court.

This litigation involves 137 parcels located in a development known as Cloverleaf Estates West (Cloverleaf properties). Until 2005, the assessment records of Allegheny County described these properties as being in

Collier Township. The deeds to the properties described the properties as being in Collier Township. The properties were taxed by Collier Township and Chartiers Valley School District as though they were in Collier Township, and the persons residing in these properties were taxed as if they resided in Collier Township.

Residents of the Cloverleaf properties voted in the Collier Township and Chartiers Valley School District elections. Collier Township made available the same services to persons residing in the Cloverleaf properties that were made available to the residents of Collier Township, including police and medical services. Chartiers Valley School District provided schooling, including adult learning classes, to residents of the Cloverleaf properties.[1]

Robinson Township never provided any services to the residents of the Cloverleaf properties. The Montour schools were not open to any children residing in the Cloverleaf properties.

Pursuant to proceedings at GD05-006088, involving a petition to establish a lot and block system in Collier Township, in 2005 it was discovered that the Cloverleaf properties are located in Robinson Township. Prior to 2005, none of the taxing bodies had any reason to question the accuracy of the assessment records of Allegheny County listing the properties as being in Collier Township.

As of January 2, 2006, residents of the Cloverleaf properties began paying their municipal taxes to the Township of Robinson and as of July 1, 2006, they began paying their school taxes to Montour School District.

---

1. This is a retirement community that made limited use of the public schools.

In this lawsuit, Montour School District and the Township of Robinson (Montour/Robinson) seek to recover (1) the real estate taxes the Cloverleaf property owners paid to the Township of Collier and Chartiers Valley School District (Chartiers/Collier) from 2001 to 2005; (2) the earned income, net profits, occupational privilege, and realty transfer taxes which Cloverleaf residents paid Chartiers/Collier from 2000 to 2005; and (3) cable television franchise fees attributable to the subscribing Cloverleaf residents from 2000 to the present.[2]

The issue raised by this lawsuit is whether the law imposes any obligation on Chartiers/Collier to pay to Montour/Robinson taxes which Chartiers/Collier collected during the period of time in which they assumed responsibility for furnishing government services to the persons residing in the Cloverleaf properties.[3] Montour/Robinson correctly state that Chartiers/Collier had no legal right to collect these taxes and fees that are the subject of this litigation. However, this case does not involve claims by owners and residents of the Cloverleaf properties to recover taxes which they paid. The issue, instead, is why Montour/Robinson may recover from Chartiers/Collier payments that owners and residents of the Cloverleaf properties made to Chartiers/Collier during the period of time Chartiers/Collier was providing government services to the owners and residents of the Cloverleaf properties.

It appears to be the position of Montour/Robinson that they are not necessarily entitled to every dollar that

---

2. Robinson admits that it is not a party to the cable franchise agreement between Collier and Comcast.

3. The parties have not cited, and I am not aware of, any case law that has addressed this issue.

Chartiers/Collier received from the Cloverleaf property owners. Instead, it appears to be the position of Montour/Robinson that the Cloverleaf property owners paid more in taxes than the cost of the government services which these property owners received. This windfall belongs to Montour/Robinson rather than Chartiers/Collier.[4]

Montour/Robinson's position is based on an improper characterization of the manner in which taxes are imposed. Budgets for school districts and municipalities are based on anticipated revenues, most of which will be received from property taxes, income taxes, and the like. The purpose of the annual taxes is to pay for the government services furnished in the year in which the taxes are imposed. Under the Uniformity Clause of the Pennsylvania Constitution, each property owner shall pay his or her proportionate share of the costs of government services which shall be measured by the value of his or her property (or the amount of his or her income) to that of his or her neighbor. *Downingtown Area School District v. Chester County Board of Assessment Appeals,* 590 Pa. 459, 913 A.2d 194, 199 (2006). Since the Cloverleaf property owners paid only their proportionate share of the government services which Chartiers/Collier provided, there is no windfall that Chartiers/Collier should disgorge. Furthermore, the claim that this court should prevent a windfall is being raised by governmental bodies seeking payments of Cloverleaf property owners that have no connection to any services provided by these governmental bodies.

---

4. I question whether Montour/Robinson would be taking the position that they owe money to Chartiers/Collier if Chartiers/Collier could establish that the cost of government services furnished to the Cloverleaf residents exceeded the amount of taxes which they paid (assuming that these costs are susceptible to being measured).

For these reasons, Montour/Robinson are not entitled to monies paid to Chartiers/Collier in prior years unless there is legislation supporting their claim.

While Montour/Robinson cite legislation stating that they have authority to levy, assess, and collect taxes on real property within the township and school district, including deed transfer taxes, and to levy earned income, net profit, and occupational/privilege taxes upon persons doing business or residing within Robinson, no laws permit them to levy taxes against Chartiers or Collier. Thus, this legislation does not support the claims of Montour/Robinson to taxes Cloverleaf residents paid to Chartiers/Collier for government services which were available to the persons paying the taxes.

Montour/Robinson rely on section 307 of the First Class Township Code, 53 P.S. §55307 which reads as follows:

"Whenever the boundaries of any township have been altered or ascertained and established, the court of quarter sessions may adjust the taxes, debts, and expenses for township, municipal and school purposes between the townships, municipalities and school districts affected."

The March 23, 2005 order of Judge O'Reilly of this court at GD05-006088 establishing the lot and block system in Collier, set January 2, 2006 as the date on which Robinson Township would levy taxes against the Cloverleaf residents and would assume responsibility for providing municipal services. Prior to that date, Collier continued to provide municipal services.[5]

---

5. Under 16 P.S. §3706, a common pleas court shall make an order placing the lot and block system into effect as of the first Monday of

January 2, 2006 was the date the boundary line became permanently effective. Under section 2-226 of the School Code of 1949, 24 P.S. §2-226, when the boundary lines of a school district are changed, the change shall take effect at the beginning of the first school year following the change in boundary lines. Consequently, this boundary change did not take effect until July 1, 2006.

Assuming that the boundaries of Chartiers and Robinson were "altered or ascertained and established" within the meaning of section 55307, this section does not support the position of Montour/Robinson that they are entitled to a portion of the taxes paid prior to January 1, 2006 (Robinson) or July 1, 2006 (Montour). The title of this provision is *Adjustment of Indebtedness* and its apparent purpose is to ensure that adjustments are made so that a governmental body that is losing property (Governmental Body A) is not saddled with expenses that should be paid by a governmental body whose boundaries are being expanded (Governmental Body B) and, alternatively, that Governmental Body B receives funds held by Governmental Body A that are intended to cover future services. For example, if in February, Governmental Body A collected taxes intended to pay for garbage services for the entire year and if in April the services were now being provided by Governmental Body B, funds received by Governmental Body A that would have been used to provide these services for the property owners now residing in Governmental Body B should be paid to Governmental Body B. If, on the

---

January next succeeding the order. Chartiers/Collier argue that this provision (and section 2-226 of the School Code, 24 P.S.) establishes that the legislature did not want proceedings to establish a lot and block system to have any retroactive effect.

other hand, Governmental Body B is receiving property containing a new parking garage funded with bonds for which Governmental Body A is responsible, the responsibility should be shifted to Governmental Body B.

There is no apparent reason why the legislature would require a governmental body whose boundaries are being reduced to make payments to a governmental body whose boundaries are being expanded that have no relationship to services that the latter governmental body will now be providing. Thus, this legislation should not be read in this fashion unless the words of the legislation clearly provide for such a result.

The words of section 55307 do not clearly provide for such a result. To the contrary, legislation titled *Adjustment of Indebtedness* is not intended to direct a court to transfer taxes to a governmental body that has not incurred any indebtedness.[6]

Furthermore, if section 55307 (which uses the word "may") should be construed to permit a court to make adjustments whenever the interests of justice are served, for the reasons that I have discussed, the interests of justice are not served by making any adjustments in this case.

Montour/Robinson also appear to rely on section 13 of the Act of June 21, 1939, P.L. 626, as amended (Second Class Assessment Law), 72 P.S. §5452.13, which reads in pertinent part as follows:

---

6. Statutory headings may be considered in construing a statute. *MacElree v. Chester County,* 667 A.2d 1188, 1194 (Pa. Commw. 1995); *Commonwealth v. Lopez,* 444 Pa. Super. 206, 210, 663 A.2d 746, 748 (1995); 1 Pa.C.S. §1924.

"The proper assessors shall, between the triennial assessments, revise any assessment or valuation according to right and equity by correcting errors and by adding thereto any property, improvements or subjects of taxation which may have been omitted or any new property, improvements or subjects of taxation which may have come into being since the last triennial assessment. *Any property, improvements or subjects of taxation which may have been omitted shall be assessed and made subject to taxation for the period durinq which said property, improvements or subjects of taxation shall have been omitted but in no event to exceed the period of five calendar years preceding* the year in which the property, improvements or subjects of taxation omitted is first added to the assessment roll." (emphasis added)

This legislation does not apply. The Cloverleaf properties were not omitted from the assessment rolls. To the contrary, they were included on the assessment rolls and the property owners paid real estate taxes to Collier Township, Chartiers School District, and Allegheny County.

For these reasons, I enter the following order of court:

## ORDER

On July 3, 2007, it is hereby ordered that defendants' motion for judgment on the pleadings is granted and that plaintiffs' complaint is dismissed with prejudice.