**[J-52-2022] [OISA: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| GM BERKSHIRE HILLS LLC AND GM OBERLIN BERKSHIRE HILLS LLC, | : | No. 16 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 930 CD |
| | : | 2020 dated July 8, 2021 Affirming |
| | : | the Order dated August 18, 2020 by |
| v. | : | the Berks County Court of Common |
| | : | Pleas, Civil Division, at No. 18- |
| | : | 18627. |
| BERKS COUNTY BOARD OF | : | |
| ASSESSMENT AND WILSON SCHOOL | : | ARGUED:  September 15, 2022 |
| DISTRICT, | : | |
| | : | |
| Appellees | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE DOUGHERTY**                              **DECIDED:  February 28, 2023**

I join Justice Donohue's Opinion in Support of Reversal and write separately to explain my slightly different rationale.  Also, to the extent the propriety of a school district's selection method of property assessment appeals under the Uniformity Clause continues to be an issue in future cases, I write to suggest a legislative remedy for what is, in my view, the underlying problem in many — if not most — matters challenging individual property reassessments, *i.e.*, stagnant, artificially low overall property values in a taxing district resulting from infrequent, sometimes decades old, countywide property assessments.

In 2017, appellants GM Berkshire Hills, LLC and GM Oberlin Berkshire Hills, LLC ("Berkshire") purchased 47 residential buildings containing 408 rental units ("the property") for a combined sales price of $54,250,000.  The assessed value of the property

at the last countywide assessment conducted in 1994 was $10,448,700. In 2018, appellee Wilson School District ("WSD") used reports by the State Tax Equalization Board ("STEB") listing recent property sales including sales prices as representative of current property value, then multiplied that value by Berks County's common level ratio ("CLR") minus the 1994 assessed value. Under that formula, the property had a reassessed value of $37,161,300, and WSD filed the assessment appeal because that value exceeded a pre-determined $150,000 cost-benefit threshold considered to justify the cost of litigating an appeal.

I am of the opinion this methodology for choosing properties for reassessment violates the Uniformity Clause, and disagree with the characterization of the method as "neutral" because it employs the CLR which, according to the Opinion in Support of Affirmance ("OISA"), is fundamentally aimed at "equalizing the targeted property's assessment ratio with those otherwise prevailing in the district[,]" and because "assessment appeals tending to enhance uniformity do not otherwise violate the Uniformity Clause so long as they are undertaken based on neutral factors such as those used by [WSD] in this matter." OISA at 16-17. In my view, the method and factors employed here are not neutral, but are unreasonably discriminatory.

Regarding taxation generally, this Court has observed:

The Uniformity Clause of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, §1. As we have interpreted it, the Uniformity Clause requires that every tax "operate alike on the classes of things or property subject to it." *Commonwealth v. Overholt & Co.*, 200 A. 849, 853 (Pa. 1938). "While reasonable and practical classifications in tax legislation are justifiable and often permissible, when a method or formula for computing a tax will, in its operation or effect, produce arbitrary, unjust, or unreasonably discriminatory results, the uniformity requirement is violated." *Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1211 (Pa. 2009).

*Mt. Airy #1, LLC v. Pa. Dep't of Revenue*, 154 A.3d 268, 272-73 (Pa. 2016).

Regarding uniformity of taxation upon property specifically, this Court has many times noted, "[p]roperty taxation . . . is different. With property taxation, real property **is** the classification." *Clifton*, 969 A.2d at 1212 (emphasis in original), *citing McKnight Shopping Ctr., Inc. v. Bd. of Prop. Assessment, Appeals & Review*, 209 A.2d 389, 392 (Pa. 1965). Thus, all property is treated as a single class regardless of any further sub-classification such as residential, commercial, farmland, etc. This interpretation supports the fundamental, underlying concept that, "in property taxation, the uniformity requirement is based on 'the general principle that taxpayers should pay no more or less than their proportionate share of government.'" *Id.*, *quoting Downingtown Area Sch. Dist. v. Chester Cty. Bd. of Assessment Appeals*, 913 A.2d 194, 199 (Pa. 2006). By using the term "government," we recognized that property taxes, in years past, provided funding for public schools, police departments, fire departments, and sanitation services. "Today in Pennsylvania, property taxation is primarily used to raise revenue for the maintenance of the counties' public school systems[.]" *Id.* at 1202.

In endorsing WSD's method of choosing which parcels of real property to selectively appeal for reassessment, the OISA relies on principles of uniformity and equitable valuation generally applicable to base year methods of valuation. *See id.* at 1214-17 (explaining differences between the established predetermined ratio (EPR) method, the STEB method which calculates each county's CLR, and the coefficient of dispersion (COD) method). The OISA endorses the STEB method for spot reassessments in part by reliance on the CLR. After reiterating that "the subject property's valuation has been raised so that its assessment ratio conforms with the CLR[,]" OISA at 14, the OISA notes the validity of the CLR is not in dispute. The OISA recognizes any data which might suggest the CLR "deviates from the average assessment ratio in the

[s]chool [d]istrict" could be "problematic" as regards uniformity, but "[a]ny difficulty along these lines is beyond the scope of the questions presented[,]" as no such data is part of the record. *Id.* at 15 n.9. Then, the OISA ultimately concludes "[a]s long as the fair market value as determined by the court is multiplied by the CLR before the millage rate is applied, the [assessment] appeal is fundamentally aimed at equalizing the targeted property's assessment ratio with those otherwise prevailing in the district." *Id.* at 16 (internal citation omitted).

I cannot agree. This Court has recognized that "the CLR is not indicative of uniformity." *Clifton*, 969 A.2d at 1216.[1] Rather, the CLR may be a "useful tool for a taxpayer to demonstrate that his property has been over-assessed, as it allows him to compare the assessed-to-market value ratio of his property to the average ratio throughout the district." *Id.* WSD's use of the CLR as a tool for demonstrating under-assessment is not so simple. WSD's multiplication of the presumed fair-market value of any property by the CLR, in conjunction with WSD's additional computational parameters such as setting a monetary sum-certain for recoupment of appeal costs to only newly-purchased real property for determining which assessments to appeal, permits individual taxation to be determined by a method that, in my view, is not uniform or neutral.[2]

---

[1] The OISA criticizes my use of a quoted sentence fragment. *See* OISA at 16 n.11. The entire quoted sentence reads, "Like the EPR, the CLR is not indicative of uniformity." *Clifton*, 969 A.2d at 1216. The EPR is an assessed-to-market-value measurement system not at issue in this matter. Moreover, the OISA cites *Downingtown* to support the notion this Court has repeatedly affirmed the use of the CLR to enhance uniformity and suggests where a school district's policies are aimed at conforming outlying assessment ratios to the CLR, the process emphatically promotes uniformity. I note *Downingtown* preceded *Clifton* in terms of our exegesis of these matters, and the process of choosing targeted properties for appeal precisely because their difference in actual to assessed value is huge can be characterized as self-serving as easily as it can be seen as promoting uniformity.

[2] I find it ironic that WSD's budget, made up of and relying exclusively on real estate tax dollars for implementation, presumably already includes funds earmarked for WSD's legal (continued…)

Although the OISA notes WSD's criteria identified properties of all types to appeal, it does not note whether any of the other appeals involved a tens of millions of dollars difference in assessed to reassessed value. Clearly, the difference here is huge, and in my view, Berkshire's resulting increased tax burden may stick out like the proverbial sore thumb precisely because WSD wields the hammer of a self-serving selection process.

Yet, the OISA appears to endorse the selection process precisely because it identifies outliers. The OISA repeatedly insists WSD's selection process does not create a prohibited subclass, but simply tends to "enhance uniformity by selecting for appeal the most non-uniform properties about which reliable information is readily available[,]" OISA at 11; the OISA states "the selection policy does not solely target recently-sold properties, but further limits such properties to those whose assessments are the most non-uniform." *Id*. at 12. The OISA also dismisses the suggestion "that [WSD] acted improperly by targeting [Berkshire's] property because of its high value, while electing not to appeal other recently-sold properties within the [s]chool [d]istrict because they are of lower value[,]" by noting the suggestion "would have greater force but for application of the CLR." *Id*. at 15-16. Thus, the OISA concludes use of the CLR results in "means [that] are not discriminatory but neutral[,]" *id.* at 16, when, in fact, the accuracy of the CLR in Berks County has not been established, the CLR is not indicative of uniformity, and the selection process is admittedly designed to identify those properties with the highest disparities between assessed to reassessed value. But a selection process so designed violates uniformity, in my view.

The reason for such great disparities in assessed to reassessed property values in any taxing district employing the base year method is in large measure due to the

---

costs and thus, that budgetary line-item could well be increased the more successful assessment appeals are litigated, even though the costs of those appeals have already been recouped.

infrequency with which county-wide property assessments are conducted.  In *Clifton*, *supra*, in connection with claims by property owners that their properties had been over-assessed, we considered whether Allegheny County's base year property taxation scheme, "which permit[ted] a single base year assessment to be used indefinitely," violated the Uniformity Clause.  *Clifton*, 969 A.2d at 1222.  We held that particular base year scheme was unconstitutional, as applied.  *See id.*  In so doing, we explained "the real-life effect[s] of long-term use of a base year system without reassessment . . . prove the lack of uniformity that has arisen over the years[.]"  *Id.* at 1226-27.[3]  This is so because "[p]roperty values may change over time and at different rates, but when a taxing body freezes values with, for instance, the prolonged use of a base year's property values, the resulting disparities throughout the taxing jurisdiction produce inequities, and those inequities tend to increase over time."  *Id.* at 1225.  "The lack of uniformity resulting from prolonged use of an outdated base year assessment, caused by market forces or other changes, cannot be characterized as a 'classification' in an effort to excuse the non-uniformity.  For the aggrieved taxpayer, the classification is akin to the arbitrariness of being struck by lightning."  *Id.* at 1228.  Thus, in *Clifton*, to remedy the inequity caused by this constitutional infirmity, we agreed with the trial court that a county-wide reassessment was required, and we remanded for that purpose.  *See id.* at 1230.

The same principles hold true for those situations in which a taxing district in an assessment appeal claims a property is under-assessed based on an outdated base year valuation, even where the CLR has been applied.  Although the issue in *Clifton* was the constitutionality of the base year method itself, the present matter is vexing precisely because the base year assessment is outdated.  The underlying inequity that arises by

---

[3] In doing so, we expressly noted Allegheny County's argument "that case-by-case, corrective application of a county's CLR, through the [assessment] appeal process, adequately satisfies . . . the Uniformity Clause[,]" was "unpersuasive."  *Id.* at 1227.

permitting clearly outdated, decades-old assessments to continue indefinitely for most properties in a district, while identifying the greatest outliers from those assessments to challenge, could be cured by more frequent county-wide assessments of all properties in each taxing district. I am cognizant of the political unpopularity frequent and costly county-wide property reassessments likely entail. However, the Uniformity Clause prohibits disparate treatment "in order to avoid political accountability." *Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 979 (Pa. 2017), *citing Downingtown Area Sch. Dist.*, 913 A.2d at 201.

Pennsylvania is one of only two states that does not have statutorily mandated reassessments on a fixed cycle. *See Clifton*, 969 A.2d at 1231 ("twenty-two of our sister states require annual reassessments, while twenty-six permit reassessments to be conducted at intervals over one year"). "Pennsylvania is the **only** state where legislation allows the use of a base year **indefinitely**." *Id.* (emphasis added). It is not this Court's role to decide, nor is it capable of fixing, a point in time at which a base year valuation is so out-of-date it leads to unconstitutionally non-uniform spot reassessments. As we noted in *Clifton*, it is the exclusive prerogative of the legislature to fashion a more comprehensive and sound constitutional scheme. And, because an indefinite base year assessment method obviously cannot capture and reflect market fluctuations and other trends affecting future property values, in my view, the legislature would do well to repeal its indefinite use, and enact an assessment period encompassing a sound interval of years.

Accordingly, I would respectfully reverse.

Justice Donohue joins this opinion in support of reversal.