# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Duffield House Associates, L.P. | : | |
| | : | |
| v. | : | No. 1501 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| Kennedy House, Inc. | : | |
| | : | |
| v. | : | No. 1502 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| 1700 Associates, L.P. | : | |
| | : | |
| v. | : | No. 1504 C.D. 2019 |
| | : | |
| City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| PRU 1901 Market LLC a/k/a 1901-1917 Market Street 1901-17 Market Street | : | |
| | : | |
| v. | : | No. 1505 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |

| | | |
|---|---|---|
| 921 Tyson Avenue Associates, LP | : | |
| | : | |
| v. | : | No. 1506 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| 211 N. 13th Street Associates, L.P. | : | |
| | : | |
| v. | : | No. 1507 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| Liberty Place Retail Associates, et al. | : | |
| | : | |
| v. | : | No. 1508 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| 2990 Holme Realty, LLC | : | |
| | : | |
| v. | : | No. 1509 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |

| | | |
|---|---|---|
| Clear Channel Outdoor, Inc.<br>and Outfront Media Inc. | : | |
| | : | |
| | : | |
| v. | : | No. 1510 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and<br>School District of Philadelphia | : | |
| | : | |
| Mifflin Street Associates, L.P. | : | |
| | : | |
| v. | : | No. 1511 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and<br>School District of Philadelphia | : | |
| | : | |
| Bleigh Street Management LLC t/a<br>State Road Storage LP | : | |
| | : | |
| | : | |
| v. | : | No. 1512 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and<br>School District of Philadelphia | : | |
| | : | |
| Post Monroe, L.P. | : | |
| | : | |
| v. | : | No. 1513 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of:  City of Philadelphia and<br>the School District of Philadelphia | : | |

LMM Associates, Mifflin Street
Associates, L.P., 135 S. 18th St.
Associates, CLBW Associates, L.P.,
and Highland Holmesburg Associates,
L.P.

      v.

City of Philadelphia and the School
District of Philadelphia

Appeal of: Board of Revision of
Taxes of the City of Philadelphia

Liberty Place Retail Assoc, Phila
Liberty Place LP, PA - 1601 Market
Street LIM, Independence Center
Realty LP, Property Owner LLC,
Cummins Ellen-Deane, SRI Eleven
1818 Market LLC, Bellevue
Associates, 1760 Market Partners,
L.P., 1912-20 Arch Street Associates,
L.P., 2040 Market Street Associates
Owner, L.P., Panco CC Rittenhouse
Row Exchange, LP and Rittenhouse
Row Investors, L.P., William Penn
House, Inc., Rittenhouse Plaza, Inc.,
1326 Chestnut Owner LLC, BJP 1021
Owner LLC, BJP 106-114 Owner
LLC, Thomas Jefferson University,
BJP 123-127 Owner LLC, BJP 15-21
Owner LLC, BJP Chester Owner
LLC, Rittenhouse Claridge LP, 1627
PS Associates LP, South 12th Street
Owner L, 2400 Locust Associates,
2901 Welsh Road Associate, 3-05
Chester A V LLC, 306 South Street
Owner LLC, 308 South Street Owner
LLC, 4100 Longshore Ave Longshore
Arms, 4333 Kelly Drive Assc. LP,
509 Vine St. TCE LP., a PA Limited
Partnership, 524 South Street Owner
LLC, 526 South Street Owner LLC,

:
:
:
:
:
:
:
:    No. 1516 C.D. 2019
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

530 South Street Owner LLC, :
538 South Street Owner LLC, 700 :
South Street Owner LLC, 777 South :
Broad Street Associates, 7th St. :
Chestnut Associates, 909 Group LP, :
AL RE Properties LLC, Algonquin :
Associates, Andover Court :
Apartments, AP RAD Venture, :
Archworks Philadelphia LLC and :
Archworks Investment LP, Awbury :
Apts 2013 LP, Bainbridge SR, :
Barrie Place 2002 LP, Belmont :
Investments 2012, Beyerwood 95 :
Realty Assoc, Borinquen Plaza Assoc,:
Bradford Ryan 86 Assoc, Broad and :
Pine Associates, Broad and South :
Associates, Broad and Spruce :
Associates, Road Plaza LP, :
Broadmore 2004 LP, Centra :
Associates, Centra Associates LP, :
Chapelcroft Holdings LP, Charter :
Court Apartments, Cheswal LP, :
Cheswal LPP, Clivenden 2002 LP, :
Clivenden Wayne Associates, :
Congress Hall 2004 LP, Corporation :
of the Presiding Bishop, Crestwood :
Properties 2004 Matzmiach Yeshua :
LLC, Delaware Avenue LLC, :
Delaware Valley Real Estate, Domino :
Lane Partners LP, Easyfine Asia Ltd., :
Edmund Street Properties, Elkins :
Apartment Partners, Everett Court :
Associates, Fairfield Apartments 2014:
LP, Fernhill Park Apartments, :
Foodarama Markets, Gateway :
Enclave LP, Giannascoli Realty :
Group, Goldmont Realty Corp., Green:
Lion Group LLC, H R Brainbridge, :
Hampshire House Investments and :
Hampshire House Partners, Hedley :
Street LLP, Hill House Apartment :

Assoc, HMC OLS II LP, Honey Nuts :
LLC, JAR Chocolate Works LP, JAR :
Packard Property LP, JAR Strawberry :
Court LP, JAR Trinity LP, JAR :
Waterfront LP, Johnson Court :
Investors LP and Johnson Court :
Partners LP, Kentwood Associates :
Inc., L B Real Estate Holdings, L3C :
Alden Park Apartments TIC 1 LLC, :
Langdon 2007 Associates and :
Langdon Street Investment, Lawndale :
99 Associates L, Level Place Owner :
LLC and ECU2002 Passyunk LLC, :
Lobro Associates, Medary Court Apts :
LP, Michael Axelrod TR, Michael :
Young Trust, Mighty Richmond :
House LLC, MPD Management Co., :
MREF 401 LP, Mutual Associates :
Ltd, Netherfield Corporation, :
Northeast Apart Assoc LP and :
Bassman Family LP NE LLC, One :
Riverside Associates, Overseers of :
Public School William Penn Charter :
School, Oxford Apartment Partners :
LP, Oxford Manor 2002 LP, :
Parametric Garage Associates, Park :
Bradford Apartments, Parker Place :
Partners LP, Parkside Walnut LLC, :
Paseo Verde New Market LP, Phila :
Auth Ind Dev, Phila Auth Ind Dev c/o :
Atwen Assoc, PhilPenn North Joint :
Venture, PIDC Financial Corporation, :
Pike Street LLC, Rhawn Terrace :
2002 LP, Robert Court Associates, :
Roosevelt Bowling Partners, RSW :
Premier Holdings LLC, S R :
Bainbridge St, Sansom Asset :
Management, Schuylkill Park, Sidco :
Associates, Six Penn Center :
Associate, Soskin Milton TR and :
Soskin Miriam TR, SREP Regency :
Apts LP, Station Realty Holdings :
LLC, Stenton House Apt LP, Transit :

Village Affordable, TRS Univ. of Penn, W & W Realty LLC, Wadsworth Manor Partners, Wallingford 2007 Associate, Washington Service Corp, Welsh 2007 Associates LP and Longshore TSNY Associates, William D. Staffieri, William Staffieri, Windsor Associates Ltd., Windsor Estates Apts Lp, Windsor Terrace Apts LP, Winmont Apartment Partner, Wood St. Assoc. LP, WWW Premier Holdings LLC, 1015 Chestnut Street Associates, LP, 1220 Sansom Associates, 1222 Arch Street Partners, LP, 123-29 Chestnut Street Associates, 1520 Locust Street Associates, L.P., 1608 Walnut Street Associates, LP, 18th & Sansom Street, L.P., 19th & Sansom Corporation, 2031 South Street Associates, L.P., 2045 Associates, L.P., 2114 Arch Street Associates, LP, 2121 Market Street Associates, L.P., 218 Arch Street Associates, L.P., 2301 JFK Owner LP, 2311 Spruce St Partners, 235 S 15th Street Partners, 23rd Street Garage VII, L.P., 2663 Partners, L.P., 312 Walnut Street Associates, L.P., 600 North Broad Associates, LP, 622 Owner L.P., 625 Vernon Road, L.P., 701 Sansom St Partners LP, 822 Pine Street LLC, 913 Wallace Street Associates, L.P., Alvin N. Shapiro, Carlyle 1612 South Street, L.P., CPI/APG Pepper Building Owner, LLC, Embassy Associates, Empire Building Partners, Executive House Investors, L.P., Fishers Crossing Realty L.P., Et Al., G2S2 Associates, L.P., JB Venture 4 LLC, KC House

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

LLC, Knockwood Associates, L.P., :
L-A 1229 Chestnut Street, L.P., LA :
1300 Chestnut Associates, L.P., Leelo :
Properties, Leroy E Kean Family :
Foundation, Leroy E Kean, Et. Al., :
Market Street Apartment Associates, :
LLC, Midtown Associates, LP, :
Parkway Associates, PM Owner L.P., :
PMC 33 N 22nd Street Associates LP, :
SAB Holdings, L.P., Et. Al., Savoy :
Properties, Spruce 1530, LLC, :
Temploy University, Et. Al., USRE :
339 S 13th LP, USRE 412 S 13th LP, :
Walnut Square Partners, Ltd., :
Washington Square Partners, L.P., :
Wister Green Armstrong 525, LP :
                                    :
        v.                          :   No. 1517 C.D. 2019
                                    :
City of Philadelphia and the Board of :
Revision of Taxes                   :
                                    :
Appeal of: Board of Revision of    :
Taxes of the City of Philadelphia  :   ALL ARGUED:  June 9, 2021


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


OPINION
BY JUDGE CEISLER                         FILED:  July 29, 2021

The City of Philadelphia (City) and the School District of Philadelphia (School District) appeal[1] from the September 25, 2019 Judgment entered by the Court of Common Pleas of Philadelphia County (Trial Court) in favor of Duffield House Associates, L.P., Kennedy House, Inc., 1700 Associates, L.P., PRU 1901 Market LLC a/k/a 1901-1917 Market Street, 921 Tyson Avenue Associates, LP, Liberty Place Retail Associates, 2900 Holme Realty, LLC, Clear Channel Outdoor, Inc. and Outfront Media, Inc., Mifflin Street Associates, L.P., and Post Monroe, L.P. (collectively, Taxpayers). The City's Board of Revision of Taxes (Tax Board) also appeals from the September 25, 2019 Judgment, challenging only the Trial Court's dismissal of Taxpayers' administrative appeals as moot.

The central issue in these consolidated appeals is whether the City's selective reassessment in Tax Year 2018 of only commercial properties[2] violated the Uniformity Clause of the Pennsylvania Constitution (Uniformity Clause).[3] For the reasons that follow, we affirm in part and vacate in part the Trial Court's Judgment.

## Background

For Tax Year 2018, the City reassessed 41,730 commercial properties in the City at current market values, imposing more than $118,000,000 in additional taxes on those properties. The City did not reassess 538,380 residential properties in the

---

[1] School District is a party in only some of the appeals, but it intervened in each case below in which it was not named as a defendant. For simplicity, when discussing the procedural history of the case and the parties' arguments, we refer to the City and School District together as "the City."

[2] The phrase "commercial properties," as used in this Opinion, refers to non-residential properties in the City, including industrial, office, retail, institutional, and multi-use properties.

[3] The Uniformity Clause provides: "*All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax*, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1 (emphasis added).

City, leaving their assessments at 2017 Tax Year values and imposing no additional taxes on those properties.

Taxpayers are the owners and lessees of approximately 700 commercial properties in the City. Duffield House Associates, L.P. (Duffield) initiated these proceedings by filing a Complaint in the Trial Court on September 14, 2017 (Duffield Action). Reproduced Record (R.R.) at 84a-98a. In its Complaint, Duffield alleged that the City selectively reassessed only commercial properties at fair market value for Tax Year 2018, in violation of the Uniformity Clause and Section 8565(b)(2) and (c) of the Consolidated First Class County Assessment Law (Assessment Law), 53 Pa. C.S. § 8565(b)(2) and (c),[4] which requires annual

---

[4] The Assessment Law sets forth the requirements for assessment and requires the City to assess all City properties each year at market value and to certify those values by March 31 of the preceding year. Section 8565(b)(2) and (c) of the Assessment Law provides:

> (b) **Certification of values.**--Notwithstanding any other provision of law:
>
> . . . .
>
> (2) *For tax years after tax year 2013, the assessment office shall certify market values at actual market value.* In arriving at actual market value, the price at which any property may actually have been sold shall be considered but shall not be controlling. In arriving at the actual market value:
>
>> (i) *All three of the following valuation methods shall be considered in conjunction with one another*:
>>
>>> (A) Reproduction or replacement cost, as applicable, minus:
>>>
>>>> (I) depreciation; and
>>>>
>>>> (II) all forms of obsolescence.
>>>
>>> (B) Comparable sales.

**(Footnote continued on next page…)**

2

reassessments of all City properties. *Id.* at 89a. The Complaint sought declaratory, injunctive, and mandamus relief, as well as "the costs of suit and such other and further relief as is just and proper." *Id.* at 97a.[5]

Over the next several months, the remaining Taxpayers filed 12 other Complaints against the City asserting similar claims.[6] Some Complaints also named the Tax Board as a defendant, and others named School District as a defendant. Eventually, the Trial Court consolidated the 13 actions for purposes of scheduling, discovery, motions practice, and trial and designated the Duffield Action as the lead case.

Taxpayers had previously filed individual challenges to their Tax Year 2018 assessments before the Tax Board. However, after filing the instant actions, Taxpayers filed Petitions for Preliminary Injunction in the Trial Court, asking the Trial Court, *inter alia*, to stay their administrative appeals while their constitutional challenges were pending, which the Trial Court granted. *See* R.R. at 1028a, 1044a,

---

             (C) Income.

          (ii) The valuation process may employ systems, methodologies and technologies that meet nationally recognized assessment standards.

   (c) **Timing of certification.**--Notwithstanding any other provision of law, *for tax years after tax year 2013, the assessment office shall certify assessed values by March 31 of the preceding year*.

53 Pa. C.S. § 8565(b)(2) and (c) (emphasis added).

[5] On January 25, 2018, in response to the City's Preliminary Objections, the Trial Court struck Taxpayers' claim for mandamus relief.

[6] One of the 13 cases, *Glasgow, Inc. v. City of Philadelphia* (Pa. Cmwlth., No. 1503 C.D. 2019, discontinued December 11, 2019), has since settled, so 12 cases remain on appeal.

1046a.[7]  In 2 of the 13 cases, the Tax Board appealed to this Court, which consolidated the appeals and affirmed the Trial Court's stays of Taxpayers' administrative appeals.  *See Liberty Place Retail Ass'n v. City of Phila.* (Pa. Cmwlth., Nos. 824 & 1145 C.D. 2018, filed Oct. 29, 2019).  In our memorandum decision, we concluded:

> [T]he [Tax] Board proceeds on the argument that the [T]rial [C]ourt did not possess jurisdiction to enjoin the [Tax] Board in the manner that it did.  The [Tax] Board's independence with respect to an appeal of the imposition of the 2018 tax assessments is not relevant in determining whether or not the [T]rial [C]ourt properly possessed equitable jurisdiction to issue the instant orders.  *Nothing in the [T]rial [C]ourt's orders staying the [Tax] Board appeals encroaches upon the [Tax] Board's statutorily-imposed appellate function.  Rather, by exercising jurisdiction and issuing the instant injunctions, the [T]rial [C]ourt merely prevented the [Tax] Board from adjudicating a number of appeals that ultimately became moot upon the [T]rial [C]ourt's ultimate determination that the 2018 tax assessments were unconstitutional and that the City must issue refunds in each of the cases. . . .  [T]his is an appropriate exercise of the [T]rial [C]ourt's* equitable powers.

*Liberty Place*, slip op. at 12 (emphasis added).

In June 2019, the Trial Court, sitting in equity, held an eight-day bench trial in the consolidated cases.  The Trial Court heard testimony from individuals familiar with and responsible for the collection of property taxes in the City, including the City's Finance Director, the Chief Assessment Officer of the City's Office of Property Assessment (OPA), and the Director of Mass Appraisal and Analysis at

---

[7] In their Petitions for Preliminary Injunction, Taxpayers also sought to enjoin the City from using Taxpayers' paid 2018 assessments while the constitutional challenges were pending in the Trial Court, but the Trial Court denied this request.  R.R. at 907a, 1028a.

4

OPA. The Trial Court also heard the testimony of several experts in property valuation.

Following trial and additional briefing and argument by the parties, on July 18, 2019, the Trial Court issued a Decree in favor of Taxpayers and against the City. In its accompanying Findings of Fact and Conclusions of Law, the Trial Court concluded that the City deliberately targeted only commercial properties for reassessment in Tax Year 2018, while allowing the previously assessed values of most other property types to "roll over" into 2018, thereby violating the Uniformity Clause. The Trial Court ordered as follows:

> 1. The Tax Year 2018 unconstitutional reassessment of [Taxpayers'] properties are stricken.
>
> 2. The assessments of [Taxpayers'] properties for real estate property taxes for Tax Year 2018 shall be reset to the assessments for the properties for [T]ax [Y]ear 2017.
>
> 3. [Taxpayers] shall be required to pay real estate property taxes for Tax Year 2018 based upon the 2017 Tax [Y]ear assessments.
>
> 4. [The City] shall pay to [Taxpayers] refunds of all taxes received from [them] based on the difference between the stricken assessments and the reinstated assessments, with interest at the legal rate and such refunds shall be due and payable July 1, 2021.
>
> 5. The appropriate City agency will process [Taxpayers'] application[s] for refunds.
>
> 6. [Taxpayers'] real estate assessment appeals for [T]ax [Y]ear 2018 before the [Tax Board] are dismissed as moot.

Trial Ct. Decree, 7/18/19, at 1.

The City and the Tax Board filed timely Post-Trial Motions. On September 25, 2019, the Trial Court issued an Order denying all Post-Trial Motions and

5

entering final judgment in the consolidated cases. In its accompanying 38-page

Opinion, the Trial Court explained the reasons for its verdict as follows:

> Our Supreme Court held in *Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch[ool] Dist[rict]* that "all property in a taxing district is a single class, and, as a consequence, *the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner*." 163 A.3d 962, 975 (Pa. 2017) (citing *Clifton v. Allegheny [Cnty.]*, 969 A.2d 1197, 1212 (Pa. 2009)). This prohibition "applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct." *Id.* (citing *Downingtown Area Sch[.] Dist[.] v. Chester C[nty.] B[d.] of Assessment Appeals*, 913 A.2d 194, 201 n.[]10) (Pa. 2006)[)]. Consequently[,] a taxing authority cannot "engage in disparate tax treatment of different sub-classifications of real property, such as residential versus commercial." *Valley Forge*, 163 A.3d at 967 n.[]4. Attempts at "equalization" of tax burdens is not a defense to disparate treatment[,] which is impermissible under our constitution. *See Valley Forge*, 163 A.3d at 977[] n.17.
>
> The evidence supports the [Trial] Court's finding that the City's 2018 reassessment, which City officials acting in policy-making capacities repeatedly referred to as a "commercial reassessment[,]"[] was in fact *a targeted reassessment of commercial properties*.
>
> The evidence further supports the [Trial] Court's findings that OPA officials were under political pressure to reassess commercial properties and the primary motivation for the assessment was to increase revenue, not to equalize tax burdens among property owners in the City.
>
> The gravamen of the City's defense is that OPA determined commercial properties were significantly under[]assessed as compared to market value while non-commercial properties were accurately assessed and there was, therefore, no need to conduct a reassessment of non-commercial properties in 2018. The City also maintains, inconsistently, that the "ratio studies" conducted by OPA . . . constitute a reassessment of all property sub-types and thus there was no discriminatory enforcement of the taxing laws.

6

The [Trial] Court rejected this argument. *The Uniformity Clause[,] as construed by our Supreme Court in Valley Forge[,] does not permit a targeted reassessment for the purposes of equalization*. Even if it did, [Taxpayers'] expert demonstrated [that] the assessed values of non-commercial properties were not actually close to market value. In other words, *there was no gross disparity between the accuracy of assessments of commercial and non-commercial properties [that] would render the assessment of residential properties for 2018 unnecessary*. Finally, the City's ratio studies are not assessments of property values and do not demonstrate equal treatment among sub-classes of properties.

Trial Ct. Op., 9/25/19, at 2-3 (emphasis added).

Turning to the specific issues raised in the City's Post-Trial Motions, the Trial Court first rejected the City's argument that *Valley Forge* permits differential treatment among sub-classes of property as long as the City uses "a neutral review or selection mechanism." *Id.* at 30. Rather, the Trial Court found "that the criteria used by the City to determine which properties were to be reassessed [were] not neutral" and that "OPA decided to target commercial properties and only commercial properties for reassessment in 2018." *Id.* The Trial Court concluded that, pursuant to *Valley Forge*, "*non-uniform treatment of real estate for the purposes of taxation violates the Uniformity Clause*, and attempts at equalization do not excuse the violation." *Id.* (emphasis added).

Next, the Trial Court rejected the City's claim that there was no evidence to support the Trial Court's finding that OPA was under political pressure to raise revenue by targeting commercial properties. The Trial Court found in pertinent part:

The totality of the evidence justifies the findings of the [Trial] Court. At City Council hearings on April 6, 2016, and May 10, 2016, members of City Council made statements to Michael Piper[, OPA's Chief Assessment Officer,] to the effect that they were eager for OPA to quickly complete a commercial reevaluation in order to increase tax

7

revenues. At the April 6, 2016, meeting [Mr.] Piper was specifically told that a reassessment would bring in "50 to 100 million dollars per year" and "whatever we can do to speed up the timing, we should try to help you do because it's extremely important." On October 9, 2016, Councilman Allan Domb sent an email to Rob[ert] Dubow[, the City's Finance Director,] asking for a timeline to accomplish fixing the commercial assessments and telling him that the commercial values "need[ed] to [be] adjusted ASAP." He also requested assurance that the increased commercial assessments would be in place in time for the next budget cycle.

OPA had begun the preliminary work necessary to carry out a commercial reassessment prior to the April 6, 2016, City Council hearing but the project itself had not begun. *The evidence was sufficient to find the decision to complete the commercial reassessment in Tax Year 2018 was influenced by the political pressure applied to OPA to increase revenue in an expeditious manner.*

*Id.* at 31-32 (footnote and internal citations omitted) (emphasis added).

The Trial Court also rejected the City's assertion that Taxpayers lacked standing to pursue their claims, finding that Taxpayers had standing because they "challenged on constitutional grounds *not the accuracy of their assessments[,] but the fact of the assessments themselves*." *Id.* at 32 (emphasis added). The Trial Court further found that the lessee-plaintiffs had standing "because of their responsibility for paying the [City's] Use and Occupancy . . . tax," which "is based upon the assessed value of the underlying property." *Id.* Thus, the Trial Court concluded that the "lessees[,] as taxpayers[,] have standing to challenge an unconstitutional assessment that leads to an increased tax burden." *Id.*

The Trial Court also concluded that Taxpayers sought relief in the proper forum, rejecting the City's contention that "if [Taxpayers] are entitled to refunds[,] those refunds must be pursued before" the Tax Board. *Id.* at 33. The Trial Court explained:

8

[T]his position was untenable because the *[Tax Board] is not competent to hear actions in equity*. [The City's] assertion that, having achieved their remedy, [Taxpayers] must now return to the [Tax Board] to seek their refunds is untenable for the same reason. *The [Tax Board's] sole mandate is to determine the market value of properties for the purpose of property taxation*. [Taxpayers] have successfully challenged not the erroneous valuation of their reassessments[,] but *the fact that they were targeted for reassessment. This Court, sitting in equity, has fashioned an appropriate remedy[,] and nothing remains for the [Tax Board] to do*.

*Id.* (internal citation omitted) (emphasis added).

Finally, the Trial Court rejected the City's claim that any remedy awarded must be prospective only. The Trial Court concluded that the relief it awarded was appropriate for the following reasons:

[The City] assert[s] it would be inequitable to allow [Taxpayers] a refund because of the adverse economic impact on the City's finances. The [Trial] Court heard credible evidence and thus made a finding of fact that the City and School District relied upon estimated tax revenues in crafting their budgets and the refund of [Taxpayers'] taxes will harm the City and its schools.

*The Court took this into consideration but was constrained by the law as it stands. Under the circumstances, there was no other appropriate remedy.* However, equity demands [that the City] be given time to prepare for the impact of the refund on City finances. For this reason the Court refused [Taxpayers'] request for an immediate refund and *instead ordered the refund take the form of a tax credit redeemable in two years. This will allow the City to budget for the refund in advance*.

*Id.* at 35 (emphasis added). The Trial Court ultimately concluded that its "factual findings are supported by the record and its remedy [is] within its discretion sitting in equity" and that the City "ha[s] not identified any trial errors entitl[ing it] to a new trial." *Id.* at 38.

9

The Trial Court also denied the Tax Board's Post-Trial Motions, wherein it asserted that the Trial Court lacked jurisdiction to dismiss Taxpayers' pending administrative appeals. The Trial Court rejected this claim:

> The [Tax Board] is named as a defendant in two of the consolidated cases: *Liberty Place Retail Assoc[iates]. . . v. City of Philadelphia*, Case No. 180105379, and *Mifflin Street Associates, L.P. . . . (LMM) v. City of Philadelphia*, No. 180400793, because [Taxpayers] sought preliminary injunctions staying [their Tax Board] appeals. The [Tax Board] did not participate in [the] trial in the consolidated action but objects to the [Trial] Court's dismissal of [Taxpayers'] pending [Tax Board] appeals. These motions are denied.

*Id.* at 4.

On October 22, 2019 and October 23, 2019, respectively, the City and the Tax Board timely appealed to this Court.[8] This Court consolidated the appeals for disposition by Order dated April 23, 2020.[9]

## Issues

(1) Did the City's selective reassessment in Tax Year 2018 of only commercial properties at current market value violate the Uniformity Clause and the Assessment Law's requirement that the City assess all properties annually at actual market value?

---

[8] On November 21, 2019, Taxpayers filed with this Court Applications to Quash the appeals, but they subsequently withdrew their Applications by praecipe. Thus, we need not address the issues raised in the Applications to Quash.

[9] On appeal from a trial court sitting in equity, this Court's standard of review is "rigorous." *Hess v. Gebhard & Co.*, 808 A.2d 912, 920 (Pa. 2002). We may not substitute our view for that of the trial court; rather, we must determine whether "'a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of'" the trial court. *Id.* (citation omitted). Our review is limited to determining whether the trial court, sitting as a chancellor in equity, committed an error of law or abused its discretion. *Williams Twp. Bd. of Supervisors v. Williams Twp. Emergency Co.*, 986 A.2d 914, 920 n.4 (Pa. Cmwlth. 2009).

10

(2)     Did the Trial Court properly strike the selective reassessment of Taxpayers' properties, reinstate the prior tax year's assessments, and order the City to refund the excess taxes Taxpayers paid to the City?

(3)     Did the Trial Court properly dismiss as moot Taxpayers' previously filed Tax Board appeals after determining the proper assessments for Taxpayers' properties?

## Analysis

### 1. Uniformity Clause Violation

The City first asserts that the Trial Court erred in rejecting its ratio studies[10] and mandating that only a method that revalues every property in the City would satisfy uniformity. The City asserts that uniformity does not require perfection; it only requires rough equalization. The City claims that OPA's strategy of using ratio studies to identify the most non-uniform sub-classification, and then focusing on just that sub-classification, amounted to rough equalization. In Tax Year 2018, this approach led, for the first time, to revaluing commercial properties, which the City claims had been grossly underassessed for several years. According to the City, focusing only on the egregiously non-uniform properties constituted "rough equalization" as a matter of law and was not unconstitutional.

In response, Taxpayers argue that revaluing a small minority of properties in the City at current market value, while leaving the vast majority of properties at prior base-year values, violates the Uniformity Clause and Section 8565 of the Assessment Law, which requires the City to assess all properties annually at actual market value.

---

[10] As the Trial Court explained, "Ratio studies are used to compare the market value placed on a property to the sale price. . . . [R]atio studies . . . '[examine] the relationship between price and value.'" Trial Ct. Op., 9/25/19, at 26 (citation omitted).

11

### a. Overview of Uniformity Clause

The Uniformity Clause precludes a taxing jurisdiction from treating similarly situated taxpayers differently. *Clifton*, 969 A.2d at 1228. A taxpayer alleging that the administration of a tax violates the Uniformity Clause must demonstrate deliberate, purposeful discrimination in the application of the tax. *Weissenberger v. Chester Cnty. Bd. of Assessment Appeals*, 62 A.3d 501, 505 (Pa. Cmwlth. 2013) (*en banc*). The term "deliberate" in this context "does not exclusively connote wrongful conduct, but also includes any intentional or systematic method of enforcement of the tax laws." *Downingtown*, 913 A.2d at 201 n.10. To satisfy the uniformity requirement, "all property must be taxed uniformly, with the same ratio of the assessed value to actual value applied throughout the taxing jurisdiction." *Clifton*, 969 A.2d at 1224. "A taxpayer may prove non-uniformity by presenting evidence of the assessment-to-value ratio of 'similar properties of the same nature in the neighborhood.'" *Downingtown*, 913 A.2d at 199 (citation omitted).

### b. *Valley Forge* Decision

In concluding that the City's Tax Year 2018 assessments violated the Uniformity Clause, the Trial Court relied extensively on *Valley Forge*, in which the Pennsylvania Supreme Court held that all real estate is a single class for purposes of the Uniformity Clause and must be assessed in the same manner. 163 A.3d at 979-80.

In *Valley Forge*, the taxpayers brought an action against a school district, as a taxing district, seeking declaratory and injunctive relief, asserting that the school district violated the Uniformity Clause by systematically appealing only assessments of commercial properties. *Id.* at 966-67. The trial court sustained the school district's preliminary objections and dismissed the taxpayers' complaint with

12

prejudice. *Id.* at 967. The taxpayers appealed to this Court, which affirmed. *Id.* at 968.

On appeal, the Supreme Court considered "whether the Uniformity Clause of the Pennsylvania Constitution permits a taxing authority to *selectively appeal only the assessments of commercial properties, such as apartment complexes, while choosing not to appeal the assessments of other types of property* – most notably, single-family residential homes – many of which are under[]assessed by a greater percentage." *Id.* at 965 (emphasis added). The *Valley Forge* Court began its uniformity analysis by stating two key principles of law, drawn from prior Supreme Court precedent: (1) "all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner"; and (2) "this prohibition applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct." *Id.* at 975 (citing *Clifton*, 969 A.2d at 1212; *Downingtown*, 913 A.2d at 201 n.10).

In considering whether the taxpayers alleged sufficient facts in their complaint to state a claim for relief, the Supreme Court held:

> [A] taxing authority is not permitted to implement a program of *only appealing the assessment of one sub-classification of properties, where that sub-classification is drawn according to property type* – that is, its use as a commercial, apartment complex, single-family residential, industrial or the like.

*Id.* at 978 (emphasis added). In so holding, the *Valley Forge* Court partially overruled this Court's decision in *In re Appeal of Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014), to the extent that this Court had approved the selection of properties for assessment appeals based on their commercial or residential

13

character.  *See id.* at 974-75, 978.  Relying on its earlier decision in *Clifton*, the *Valley Forge* Court explained that "'real property **is** the classification,'" and thus, "*all real estate in a taxing district* is constitutionally entitled to uniform treatment." *Id.* at 977 (quoting *Clifton*, 969 A.2d at 1212) (first emphasis in original; second emphasis added).[11]  The Court also noted that a taxing district's attempts at equalization of tax burdens is not a defense to disparate treatment under the Pennsylvania Constitution.  *Id.* at 977 n.17.

The *Valley Forge* Court concluded that the school district's assessment appeal policy, which targeted only commercial properties, violated the Uniformity Clause:

> Where there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the latter goal be given primacy. . . .
>
> The particular appeal policy employed by a taxing district lies within its discretion.  Our task is limited to enforcing the constitutional boundaries of any such approach, and our holding here is limited to the conclusion that the appeal policy [the taxpayers] have alleged – in terms of its classification of properties by type and/or the residency status of their owners – transgress those boundaries. . . .

*Id.* at 980.  Therefore, the Supreme Court reversed this Court's order sustaining the school district's preliminary objections and remanded for further proceedings.  *Id.*

However, the *Valley Forge* Court noted that, unlike a selection based on the commercial or residential nature of a property, a taxing district's choice to pursue

---

[11] *See also City of Harrisburg v. Dauphin Cnty. Bd. of Assessment Appeals*, 677 A.2d 350, 351 (Pa. Cmwlth. 1996) (*en banc*) (concluding that targeting certain properties for assessment at current market values while applying base-year values to other properties is unconstitutionally non-uniform); *City of Lancaster v. Cnty. of Lancaster*, 599 A.2d 289, 296 (Pa. Cmwlth. 1991) (*en banc*) (stating that "interjecting current market value into the formula in a selected group of [properties] without applying the same methodology to all property" violates the Uniformity Clause).

assessment appeals *based solely on financial criteria* would not necessarily violate the Uniformity Clause:

> Our disapproval of *Springfield*'s interpretation of th[e Supreme] Court's precedent should not be equated to disagreement with the result it reached. In *Springfield*, the property owners challenged a school district's policy of using a monetary threshold to decide which properties to appeal. . . . *They did not allege a scheme involving disparate treatment of property sub-classifications drawn according to property type* or the status of its owner as a resident or non-resident of the taxing district.

*Id.* at 975 n.13 (emphasis added). Finally, the Supreme Court cautioned "that nothing in this opinion should be construed as suggesting that the use of a monetary threshold . . . or some other selection criteria would violate the Uniformity Clause *if it were implemented without regard to the type of property in question or the residency status of its owner*." *Id.* at 979 (emphasis added).

Recently, this Court addressed *Valley Forge* in *Kennett Consolidated School District v. Chester County Board of Assessment Appeals*, 228 A.3d 29 (Pa. Cmwlth.), *appeal granted*, 240 A.3d 611 (Pa. 2020). In *Kennett*, we considered a taxpayer's challenge to a trial court's denial of its motion to quash the school district's assessment appeal of its property. 228 A.3d at 31. Relying on the Supreme Court's analysis in *Valley Forge*, the taxpayer argued that the school district violated the Uniformity Clause by: (1) appealing the assessments of only commercial properties; and (2) setting a monetary threshold targeting properties underassessed by $1 million. *Id.* at 34.

On appeal, this Court affirmed the trial court's ruling, holding:

> *We conclude that [the school district's] appeal practices did not violate the Uniformity Clause.* Under *Valley Forge*, [the school district's] actions were constitutionally firm. The record reflects that *[the school*

15

*district] intentionally disregarded the type of property* and, thus, it cannot be said that [its] actions in appealing the assessments of commercial properties were intentional. *Where, as here, a taxing authority intentionally disregards the type of property when deciding what property assessments to appeal, its conduct is inherently not deliberate.* Moreover, [the school district's] actions *did not systematically target commercial properties, but, rather, only focused on properties that would be worth the cost and expense of an appeal*. *Valley Forge* makes it abundantly clear that there is a balance to be struck between a school district's ability to appeal an assessment and the Uniformity Clause. Thus, *a school district's policy that attempts to be fiscally responsible by only appealing assessments that would generate enough revenue to justify the cost of the appeal does not violate the Uniformity Clause.*

*Id.* at 37 (emphasis added). We further clarified that "[t]he mere fact that all appealed properties were commercial does not *per se* create a violation of the Uniformity Clause. *This is especially so in light of [the school district's] intentional disregard for the nature of the property*." *Id.* at 39 (emphasis added). Thus, *Kennett* reiterates the principle that selection of properties for assessment based solely on property type violates the Uniformity Clause, whereas selection based on financial reasons, without regard to property type, does not.

### c. Application of *Valley Forge* to this Case

The City attempts to distinguish this case from *Valley Forge* by asserting that it did not unconstitutionally target non-residential properties for reassessment in Tax Year 2018. Rather, the City contends that it chose to reassess Taxpayers' properties not because of their commercial nature, but because OPA's ratio studies showed that commercial properties were the "most underassessed" properties in the City and had been "grossly underassessed" for several years. This claim, however, is belied by the record.

16

Contrary to the City's contention, the evidence did not establish, nor did the Trial Court find, that commercial properties were the most underassessed properties in the City. Rather, the Trial Court found that residential properties were substantially underassessed. Trial Ct. Op., 9/25/19, at 31. Relying primarily on the testimony of Taxpayers' economic expert, Kevin Gillen, Ph.D., the Trial Court determined:

> *[Dr.] Gillen's studies found that residential properties were under[]assessed as compared to their market value for Tax Year 2018 by approximately $20 billion.* [Dr.] Gillen found that the housing market in Philadelphia grew from the years 2014 to 2018 by 31.5[%], while assessed values of residential properties during that same time period lagged far behind, increasing only by 3.2[%].

*Id.* at 27-28 (internal citation omitted) (emphasis added). The Trial Court expressly credited Dr. Gillen's testimony because he "was qualified by the Court as an expert in real estate and urban economics and valuation and the [Trial] Court was convinced by the superior rigor of his techniques and analysis as compared to the City's opposing expert." *Id.* at 27. Based on Dr. Gillen's credible testimony, the Trial Court concluded that "there was *no gross disparity between the accuracy of assessments of commercial and non-commercial properties* which would render the assessment of residential properties for 2018 unnecessary." *Id.* at 3 (emphasis added). In fact, "the City conducted a complete reassessment of both residential and commercial properties for Tax Year 2019[,] which resulted in a sizeable increase in the assessments of residential properties." Trial Ct. Findings of Fact & Conclusions of Law, 7/18/19, at 2.

Moreover, the Trial Court found, based on the credible evidence of record, that the ratio studies on which the City relied to conduct the 2018 assessments were "seriously flawed" and "unreliable." *Id.* at 28; Trial Ct. Finding of Fact (F.F.) No.

17

69. Indeed, the City's own expert, Robert Gloudemans, testified that OPA's ratio studies were "unreliable" and had to be "taken with a grain of salt." Trial Ct. Op., 9/25/19, at 27 (citation omitted). Mr. Gloudemans further admitted in the course of his testimony that OPA's process of "validating sales" as arms-length transactions was "inadequate." Trial Ct. F.F. No. 68.

The testimony of Taxpayers' expert, Dr. Gillen, likewise demonstrated the unreliability of OPA's ratio studies, opining that they were based on a "flaw[ed]" sales validation process:

> [Dr.] Gillen testified there were approximately 79,000 records of arms-length residential sales during the time period used in the City's ratio study, 2009 to 2014, but approximately 31,000 sales were used in the ratio study cited by the City's expert[,] [Mr.] Gloudemans. [Dr.] Gillen found this difference to be "disconcertingly high." [He testified that w]hen so many outliers are removed from a ratio study[,] "you can get the result you want . . . ."

*Id.* at 28 (internal citations omitted).

The record is also replete with evidence establishing that the City intentionally targeted commercial properties, and only commercial properties, for reassessment in Tax Year 2018. Representatives of the City repeatedly stated on numerous occasions that for Tax Year 2018, the City was reassessing only commercial properties and that, for Tax Year 2019, the City would conduct the first countywide reassessment since 2014. Trial Ct. F.F. Nos. 62-64. For example:

> At trial[,] [Michael] Piper[, OPA's Chief Assessment Officer,] identified the minutes of a senior staff meeting that took place on December 2, 2016, in which [Mr.] Piper made reference to a "commercial reassessment" in Tax Tear 2018 and a "citywide reassessment" in Tax Year 2019.

18

At a senior staff meeting on December 2, 2016, [Mr.] Piper refers to 2018 as a "commercial reassessment[,]" whereas for 2019 OPA "[w]ill be working on a [c]itywide assessment."

At a City Council hearing on March 28, 2017, Rob[ert] Dubow[, the City's Finance Director,] testified to City Council that "We're just completing a commercial reassessment. Every year after this, we'll be doing a full reassessment."

Trial Ct. Op., 9/25/19, at 29 (internal citations omitted); *see also* R.R. at 692a (in a December 2016 email, Mr. Dubow confirmed that OPA was conducting a "reassessment of commercial properties" to be implemented "before we submit our next budget" in the spring of 2017, and that "[a]fter that, we'll be doing full assessments each year"). Kevin Keene, OPA's Director of Mass Appraisal, prepared a presentation in October 2016, in which he stated that "[f]or 2018, OPA is tasked with revaluation of all non[-]residential properties and non[-]residential vacant land." R.R. at 719a.[12]

The City also issued a press release in March 2017, stating publicly that "owners of commercial, industrial and institutional properties in [the City] will receive notices of reassessment of property values" and that the reassessment "involved a thorough analysis of some of [the City's] most complex and high-valued parcels, including hotels, office buildings, and apartment buildings" as well as "all retail properties[,] . . . warehouses, commercially-zoned vacant land, and properties with multiple uses." *Id.* at 681a-82a; *see also* Trial Ct. Op., 9/25/19, at 31-32 (finding that the evidence showed the City's decision to conduct commercial

---

[12] In the same presentation, Mr. Keene also acknowledged that the City could not selectively reassess some properties while leaving others at prior years' values. *See* R.R. at 719a ("By statute, *all properties within a given class must be revalued at the same time*.") (emphasis added).

reassessments in Tax Year 2018 was motivated in part by the desire to increase revenue expeditiously).

We conclude that the record contains overwhelming evidence demonstrating that the City specifically targeted commercial properties for reassessment in Tax Year 2018. We agree with Taxpayers that, under *Valley Forge*, there is no lawful basis on which the City may choose to selectively reassess a certain sub-class of properties at current market value, while not similarly reassessing other sub-classes of properties in a given tax year. By singling out Taxpayers' properties for reassessment based solely on their commercial nature, the City engaged in disparate treatment of sub-classes of properties within a taxing district. *See Valley Forge*, 163 A.3d at 979-80; *Clifton*, 969 A.2d at 1212; *Kennett*, 228 A.3d at 37. Accordingly, we conclude that the City's selective reassessment of only commercial properties in Tax Year 2018 violated the Uniformity Clause.

## 2. Appropriate Remedy

Next, the City argues that the Trial Court abused its discretion in rolling back Taxpayers' assessments to their Tax Year 2017 assessments. The City claims that the Trial Court was required to analyze whether each individual Taxpayer paid its fair share of the tax burden and failed to consider whether Taxpayers' assessment levels were at the same level as other properties in the City. The City further argues that the Trial Court erred in failing to consider that the considerable financial harm to the City from a blanket rollback drastically outweighs the non-existent harm to Taxpayers if they were required to pursue their claims before the Tax Board.

This Court has held that "[c]ourts sitting in equity hold broad powers to grant relief that will result in an equitable resolution of a dispute." *Williams Twp.*, 986 A.2d at 921. However, "a trial court must formulate an equitable remedy that is

20

consistent with the relief requested." *Id.* Thus, "while a chancellor in equity may fashion a remedy that is narrower than the relief requested, he or she may not grant relief that exceeds the relief requested." *Id.*

The City contends that an equity court is not authorized to award refunds because tax refunds may only be sought individually through the administrative process. As the Trial Court correctly determined, however, Pennsylvania law supports awarding refunds in tax cases involving as-applied constitutional challenges.

In *Nextel Communications of the Mid-Atlantic, Inc. v. Department of Revenue*, 171 A.3d 682 (Pa. 2017), our Supreme Court distinguished between challenges to a tax statute and challenges to discriminatory practices under a tax statute. The *Nextel* Court determined that a refund was not the proper remedy in that case because the case involved "a constitutional challenge to the structure of a taxing statute"; however, the Court expressly acknowledged that refunds would be appropriate in cases involving "*discriminatory application* of an *otherwise valid taxing statute* to the parties by the taxing authority." *Id.* at 705 (first emphasis added; second emphasis in original). In the latter circumstance, the Supreme Court explained that "the *only suitable remedy* for such discrimination [i]s *to make whole the taxpayer who was overcharged through a refund of the overpaid taxes*." *Id.* (emphasis added).

Here, Taxpayers do not challenge the validity or structure of the applicable taxing statutes; rather, they challenge the City's *discriminatory application* of those statutes to Taxpayers. The Trial court determined, and we agree, that the City's selective reassessment of Taxpayers' properties in Tax Year 2018 was an unconstitutional application of the taxing statutes. Therefore, under the reasoning

21

espoused in *Nextel*, "the only suitable remedy" is to "refund . . . the overpaid taxes." *Id.*[13]

Moreover, in the proceedings before the Trial Court, the City had opposed Taxpayers' Petitions for Preliminary Injunction by arguing that Taxpayers' alleged harms are "pecuniary in nature" and, therefore, did not satisfy the "irreparable injury" test for a preliminary injunction. *See* R.R. at 938a-39a. The Trial Court agreed that Taxpayers' claims are compensable by monetary damages and denied the injunction. *Id.* at 1028a; *see id.* at 1022a (at the hearing on the Petitions for Preliminary Injunction, the Trial Court stated that Taxpayers' alleged losses "are easily calculated and *compensable by monetary damages*") (emphasis added); *id.* at 97a (in their Complaint, Taxpayers sought declaratory and injunctive relief, the costs of litigation, and "such other and further relief as is just and proper"). The doctrine of judicial estoppel "furthers consistency and uniformity in decision-making" by precluding a party from switching legal positions to suit its own interests. *Bienert v. Bienert*, 168 A.3d 248, 255 (Pa. Super. 2017); *see Ligon v. Middletown Area Sch. Dist.*, 584 A.2d 376, 380 (Pa. Cmwlth. 1990) (noting that judicial estoppel "appl[ies] with equal if not greater force when a party switches positions within the same action"). We agree with Taxpayers that the City is estopped from claiming on appeal that Taxpayers cannot obtain monetary relief, when it took a contrary position at the preliminary injunction stage of these proceedings.

We also reject the City's assertion that the Trial Court failed to consider the significant adverse impact that the issuance of mass refunds would have on the

---

[13] Unlike this case, *Nextel* involved a facial challenge to the constitutionality of a taxing statute, not an as-applied constitutional challenge. As such, the *Nextel* Court did not award refunds because it determined that the offending provision could be severed from the statute, leaving the remainder of the statute (and the resulting assessment against the taxpayers) intact.

City's finances. The Trial Court expressly found that, at the time of its Decree, the City lacked adequate funds to issue the refunds and the money would likely need to come from funds set aside for the City's schools, police, fire, and streets. Trial Ct. F.F. Nos. 72, 73, 80-84. In its Opinion, the Trial Court explained that it fully considered the anticipated financial burden on the City, but ultimately decided that refunding the overassessed amounts is the only remedy that would make Taxpayers whole. Trial Ct. Op., 9/25/19, at 35. In doing so, the Trial Court granted the City two years to incorporate the cost of the refunds into its budget before issuing the refunds to Taxpayers:

> The [Trial] Court took this [factor] into consideration but was constrained by the law as it stands. Under the circumstances, there was no other appropriate remedy. However, equity demands [that the City] be given time to prepare for the impact of the refund on City finances. For this reason *the [Trial] Court refused [Taxpayers'] request for an immediate refund and instead ordered the refund take the form of a tax credit redeemable in two years. This will allow the City to budget for the refund in advance.*

*Id.* at 35 (emphasis added); *see Williams Twp.*, 986 A.2d at 921 (stating that a trial court sitting in equity "must formulate an equitable remedy that is consistent with the relief requested").

Furthermore, we reject the City's contention that the only appropriate remedy would be to allow Taxpayers to be reassessed again by the Tax Board. We agree with Taxpayers that such a remedy would be futile, because the Trial Court has already determined the proper assessments for the properties at issue. Specifically, the Trial Court ordered that Taxpayers' 2018 assessments be stricken, that their 2017 assessments be reinstated, and that the City refund the overassessed amounts to Taxpayers within two years. Trial Ct. Decree, 7/18/19, at 1. Based on this explicit

ruling, the City's Department of Revenue will be able to calculate the appropriate refund amount due to each Taxpayer.

Accordingly, we conclude that the Trial Court properly exercised its discretion in awarding refunds to Taxpayers.

### 3. Dismissal of Tax Board Appeals

Finally, the Tax Board argues that the Trial Court lacked jurisdiction to dismiss Taxpayers' previously filed administrative appeals. In particular, the Tax Board takes issue with paragraph 6 of the Trial Court's Decree, which states: "[Taxpayers'] real estate assessment appeals for [T]ax [Y]ear 2018 before the [Tax Board] are dismissed as moot." Trial Ct. Decree, 7/18/19, at 1; *see* Trial Ct. Op., 9/25/19, at 4 (denying Tax Board's Post-Trial Motions on this issue).

The Tax Board is the only entity authorized by statute to hear and decide appeals of property tax assessments certified by OPA. *See* Section 14 of the Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. § 5341.14; Section 2(c) of the Act of August 26, 1953, P.L. 1476, *as amended*, 53 P.S. § 13132(c); *see also Bd. of Revision of Taxes v. City of Phila.*, 4 A.3d 610, 624-27 (Pa. 2010) (discussing the Tax Board's adjudicative and appellate functions with regard to real estate tax assessments in the City).

As discussed *supra*, this Court previously determined that Taxpayers' administrative appeals became moot "upon the [T]rial [C]ourt's ultimate determination that the 2018 tax assessments were unconstitutional and that the City must issue refunds." *Liberty Place*, slip op. at 12. This Court further concluded that the Trial Court properly exercised equitable jurisdiction in enjoining the Tax Board from proceeding with Taxpayers' administrative appeals during the pendency of this litigation. *Id.* However, the issue presently before this Court is whether the Trial

24

Court had subject matter jurisdiction to enter a final order dismissing Taxpayers' unadjudicated appeals pending before the Tax Board. We agree with the Tax Board that it did not.

We have found no statute or regulation (nor did the Trial Court cite any) giving the Trial Court authority to issue a final order with regard to Taxpayers' still-pending Tax Board appeals. Because the Trial Court is incompetent to adjudicate administrative appeals within the Tax Board's exclusive jurisdiction, it lacked jurisdiction to dismiss those appeals.[14] Therefore, we must vacate that portion of the Trial Court's September 25, 2019 Judgment.

## Conclusion

In sum, we conclude that, under the Pennsylvania Supreme Court's holding in *Valley Forge*, Taxpayers established that the City's selective reassessment in Tax Year 2018 of only commercial properties violated the Uniformity Clause of the Pennsylvania Constitution. We also conclude that the Trial Court's remedy of issuing tax refunds to Taxpayers was appropriate under the circumstances. *Nextel* supports an award of refunds where taxpayers have succeeded in an as-applied constitutional challenge, as in this case, and the Trial Court crafted an equitable remedy that made Taxpayers whole. Finally, we conclude that the Trial Court erred in dismissing Taxpayers' administrative appeals before the Tax Board as moot because it lacked jurisdiction to do so.

---

[14] As the Tax Board noted in its Post-Trial Motions, Taxpayers may choose to voluntarily discontinue their appeals before the Tax Board, or the Tax Board may enter an order "disposing of the [a]ppeals without calling into question the statutory jurisdiction of the [Tax Board]." R.R. at 1056a-57a.

Accordingly, we vacate that portion of the Trial Court's September 25, 2019 Judgment dismissing Taxpayers' administrative appeals as moot and affirm the remainder of the Judgment.

$$\text{_____}$$

ELLEN CEISLER, Judge

Judges Cohn Jubelirer and Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Duffield House Associates, L.P. | : | No. 1501 C.D. 2019 |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| Kennedy House, Inc. | : | |
| | : | |
| v. | : | No. 1502 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| 1700 Associates, L.P. | : | |
| | : | |
| v. | : | No. 1504 C.D. 2019 |
| | : | |
| City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| Appeal of:  City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| PRU 1901 Market LLC a/k/a 1901-1917 Market Street 1901-17 Market Street | : | |
| | : | |
| v. | : | No. 1505 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |

| | | |
|---|---|---|
| 921 Tyson Avenue Associates, LP | : | |
| | : | |
| v. | : | No. 1506 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| 211 N. 13th Street Associates, L.P. | : | |
| | : | |
| v. | : | No. 1507 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| Liberty Place Retail Associates, et al. | : | |
| | : | |
| v. | : | No. 1508 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |
| | : | |
| 2990 Holme Realty, LLC | : | |
| | : | |
| v. | : | No. 1509 C.D. 2019 |
| | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia and School District of Philadelphia | : | |

Clear Channel Outdoor, Inc.                  :
and Outfront Media Inc.                       :
                                              :
          v.                                  :  No. 1510 C.D. 2019
                                              :
City of Philadelphia                          :
                                              :
Appeal of: City of Philadelphia and           :
School District of Philadelphia               :

Mifflin Street Associates, L.P.              :
                                              :
          v.                                  :  No. 1511 C.D. 2019
                                              :
City of Philadelphia                          :
                                              :
Appeal of: City of Philadelphia and           :
School District of Philadelphia               :

Bleigh Street Management LLC t/a             :
State Road Storage LP                         :
                                              :
          v.                                  :  No. 1512 C.D. 2019
                                              :
City of Philadelphia                          :
                                              :
Appeal of: City of Philadelphia and           :
School District of Philadelphia               :

Post Monroe, L.P.                            :
                                              :
          v.                                  :  No. 1513 C.D. 2019
                                              :
City of Philadelphia                          :
                                              :
Appeal of:  City of Philadelphia and          :
the School District of Philadelphia           :

| | | |
|---|---|---|
| LMM Associates, Mifflin Street Associates, L.P., 135 S. 18th St. Associates, CLBW Associates, L.P., and Highland Holmesburg Associates, L.P. | : : : : : | |
| | : | |
| v. | : | No. 1516 C.D. 2019 |
| | : | |
| City of Philadelphia and the School District of Philadelphia | : : : | |
| | : | |
| Appeal of: Board of Revision of Taxes of the City of Philadelphia | : : | |

Liberty Place Retail Assoc, Phila :
Liberty Place LP, PA - 1601 Market :
Street LIM, Independence Center :
Realty LP, Property Owner LLC, :
Cummins Ellen-Deane, SRI Eleven :
1818 Market LLC, Bellevue :
Associates, 1760 Market Partners, :
L.P., 1912-20 Arch Street Associates, :
L.P., 2040 Market Street Associates :
Owner, L.P., Panco CC Rittenhouse :
Row Exchange, LP and Rittenhouse :
Row Investors, L.P., William Penn :
House, Inc., Rittenhouse Plaza, Inc., :
1326 Chestnut Owner LLC, BJP 1021 :
Owner LLC, BJP 106-114 Owner :
LLC, Thomas Jefferson University, :
BJP 123-127 Owner LLC, BJP 15-21 :
Owner LLC, BJP Chester Owner :
LLC, Rittenhouse Claridge LP, 1627 :
PS Associates LP, South 12th Street :
Owner L, 2400 Locust Associates, :
2901 Welsh Road Associate, 3-05 :
Chester A V LLC, 306 South Street :
Owner LLC, 308 South Street Owner :
LLC, 4100 Longshore Ave Longshore :
Arms, 4333 Kelly Drive Assc. LP, :
509 Vine St. TCE LP., a PA Limited :
Partnership, 524 South Street Owner :
LLC, 526 South Street Owner LLC, :

530 South Street Owner LLC,                        :
538 South Street Owner LLC, 700                    :
South Street Owner LLC, 777 South                  :
Broad Street Associates, 7th St.                   :
Chestnut Associates, 909 Group LP,                 :
AL RE Properties LLC, Algonquin                    :
Associates, Andover Court                          :
Apartments, AP RAD Venture,                        :
Archworks Philadelphia LLC and                     :
Archworks Investment LP, Awbury                    :
Apts 2013 LP, Bainbridge SR,                       :
Barrie Place 2002 LP, Belmont                      :
Investments 2012, Beyerwood 95                     :
Realty Assoc, Borinquen Plaza Assoc,:
Bradford Ryan 86 Assoc, Broad and                  :
Pine Associates, Broad and South                   :
Associates, Broad and Spruce                       :
Associates, Road Plaza LP,                         :
Broadmore 2004 LP, Centra                          :
Associates, Centra Associates LP,                  :
Chapelcroft Holdings LP, Charter                   :
Court Apartments, Cheswal LP,                      :
Cheswal LPP, Clivenden 2002 LP,                    :
Clivenden Wayne Associates,                        :
Congress Hall 2004 LP, Corporation                 :
of the Presiding Bishop, Crestwood                 :
Properties 2004 Matzmiach Yeshua                   :
LLC, Delaware Avenue LLC,                          :
Delaware Valley Real Estate, Domino:
Lane Partners LP, Easyfine Asia Ltd., :
Edmund Street Properties, Elkins                   :
Apartment Partners, Everett Court                  :
Associates, Fairfield Apartments 2014:
LP, Fernhill Park Apartments,                      :
Foodarama Markets, Gateway                         :
Enclave LP, Giannascoli Realty                     :
Group, Goldmont Realty Corp., Green:
Lion Group LLC, H R Brainbridge,                   :
Hampshire House Investments and                    :
Hampshire House Partners, Hedley                   :
Street LLP, Hill House Apartment                   :
Assoc, HMC OLS II LP, Honey Nuts  :

LLC, JAR Chocolate Works LP, JAR : Packard Property LP, JAR Strawberry : Court LP, JAR Trinity LP, JAR : Waterfront LP, Johnson Court : Investors LP and Johnson Court : Partners LP, Kentwood Associates : Inc., L B Real Estate Holdings, L3C : Alden Park Apartments TIC 1 LLC, : Langdon 2007 Associates and : Langdon Street Investment, Lawndale : 99 Associates L, Level Place Owner : LLC and ECU2002 Passyunk LLC, : Lobro Associates, Medary Court Apts : LP, Michael Axelrod TR, Michael : Young Trust, Mighty Richmond : House LLC, MPD Management Co., : MREF 401 LP, Mutual Associates : Ltd, Netherfield Corporation, : Northeast Apart Assoc LP and : Bassman Family LP NE LLC, One : Riverside Associates, Overseers of : Public School William Penn Charter : School, Oxford Apartment Partners : LP, Oxford Manor 2002 LP, : Parametric Garage Associates, Park : Bradford Apartments, Parker Place : Partners LP, Parkside Walnut LLC, : Paseo Verde New Market LP, Phila : Auth Ind Dev, Phila Auth Ind Dev c/o : Atwen Assoc, PhilPenn North Joint : Venture, PIDC Financial Corporation, : Pike Street LLC, Rhawn Terrace : 2002 LP, Robert Court Associates, : Roosevelt Bowling Partners, RSW : Premier Holdings LLC, S R : Bainbridge St, Sansom Asset : Management, Schuylkill Park, Sidco : Associates, Six Penn Center : Associate, Soskin Milton TR and : Soskin Miriam TR, SREP Regency : Apts LP, Station Realty Holdings : LLC, Stenton House Apt LP, Transit : Village Affordable, TRS Univ. of :

Penn, W & W Realty LLC,                          :
Wadsworth Manor Partners,                        :
Wallingford 2007 Associate,                      :
Washington Service Corp, Welsh                   :
2007 Associates LP and Longshore                 :
TSNY Associates, William D.                      :
Staffieri, William Staffieri, Windsor            :
Associates Ltd., Windsor Estates                 :
Apts Lp, Windsor Terrace Apts LP,                :
Winmont Apartment Partner, Wood                  :
St. Assoc. LP, WWW Premier                       :
Holdings LLC, 1015 Chestnut Street               :
Associates, LP, 1220 Sansom                      :
Associates, 1222 Arch Street                     :
Partners, LP, 123-29 Chestnut Street             :
Associates, 1520 Locust Street                   :
Associates, L.P., 1608 Walnut Street             :
Associates, LP, 18th & Sansom                    :
Street, L.P., 19th & Sansom                      :
Corporation, 2031 South Street                   :
Associates, L.P., 2045 Associates,               :
L.P., 2114 Arch Street Associates,               :
LP, 2121 Market Street Associates,               :
L.P., 218 Arch Street Associates,                :
L.P., 2301 JFK Owner LP, 2311                    :
Spruce St Partners, 235 S 15th Street            :
Partners, 23rd Street Garage VII,                :
L.P., 2663 Partners, L.P., 312 Walnut            :
Street Associates, L.P., 600 North               :
Broad Associates, LP, 622 Owner                  :
L.P., 625 Vernon Road, L.P., 701                 :
Sansom St Partners LP, 822 Pine                  :
Street LLC, 913 Wallace Street                   :
Associates, L.P., Alvin N. Shapiro,              :
Carlyle 1612 South Street, L.P.,                 :
CPI/APG Pepper Building Owner,                   :
LLC, Embassy Associates, Empire                  :
Building Partners, Executive House               :
Investors, L.P., Fishers Crossing                :
Realty L.P., Et Al., G2S2 Associates,            :
L.P., JB Venture 4 LLC, KC House                 :
LLC, Knockwood Associates, L.P.,                 :
L-A 1229 Chestnut Street, L.P., LA               :

1300 Chestnut Associates, L.P., Leelo :
Properties, Leroy E Kean Family      :
Foundation, Leroy E Kean, Et. Al.,   :
Market Street Apartment Associates,  :
LLC, Midtown Associates, LP,         :
Parkway Associates, PM Owner L.P., :
PMC 33 N 22nd Street Associates LP,:
SAB Holdings, L.P., Et. Al., Savoy   :
Properties, Spruce 1530, LLC,        :
Temploy University, Et. Al., USRE    :
339 S 13th LP, USRE 412 S 13th LP, :
Walnut Square Partners, Ltd.,        :
Washington Square Partners, L.P.,    :
Wister Green Armstrong 525, LP       :
                                     :
        v.                           : No. 1517 C.D. 2019
                                     :
City of Philadelphia and the Board of :
Revision of Taxes                    :
                                     :
Appeal of: Board of Revision of      :
Taxes of the City of Philadelphia    : ALL ARGUED:  June 9, 2021

# **O R D E R**

AND NOW, this 29th day of July, 2021, we hereby VACATE that portion of the September 25, 2019 Judgment entered by the Court of Common Pleas of Philadelphia County (Trial Court) dismissing Appellees' administrative appeals as moot and AFFIRM the remainder of the Trial Court's September 25, 2019 Judgment.

_____
ELLEN CEISLER, Judge